# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Yusuf Brown
    Plaintiff

    vs

Edward Voorhies, et al.,
    Defendants

Case No. 07cv101
**REPORT AND RECOMMENDATION**
Barrett, J.
Hogan, M.J.

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 49), Plaintiff's Motion in Opposition of Summary Judgment and Cross-Moves [sic] for Summary Judgment in Favor of the Plaintiff (Docs. 54, 55), Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment and It's Memorandum in Opposition to the Plaintiff's Motion for Summary Judgment (Doc. 62), and Plaintiff's Reply to Defendants' Opposition and Response to Plaintiff's Summary Judgment Motion and Opposition to Defendants' Summary Judgment Motion (Doc. 64).

## BACKGROUND

Plaintiff has filed this action alleging, *inter alia*, that he is being poisoned by members of the Aryan Brotherhood prison gang. Plaintiff claims that this is being done through the food that is served to him in his cellblock. (Doc. 2, Complaint).

He alleges the Defendants have been deliberately indifferent to his serious medical needs and safety. (Doc. 2, ¶¶48-52). Defendants are: Dr. Sevrey, Medical Director of SOCF, Corrections Officer Diane Sand, Health Care Administrator Vonda Adkins, SOCF Warden Edward Voorhies, and a Jane Doe Nurse, later identified as Arjayra Treadway. Plaintiff alleges that on September 11, 2006, Corrections Officer Diane Sand conducted a search of Plaintiff's cell and found a homemade knife. Plaintiff was placed in segregation. Plaintiff alleges that, while he was in segregation, Defendant Sand informed several members of the Aryan Brotherhood that the Plaintiff had "snitched" on them. Plaintiff alleges that on October 30, 2006, he became ill after eating dinner. He claims that this happened again on November 6, 2006. He

alleges two days later he passed out and that he noticed that the right side of his face, his right fingers, and his right toes were numb. He was taken to the prison infirmary in the middle of the night and was seen by Nurse Treadway. After examining him she found no problem, but told him that he should sign up for Nurses' sick call if his symptoms continue. (Ex. A-5). He claims that some inmates yelled to him that they had poisoned his food and that he would die slowly for snitching on them. On November 21, 2006, Plaintiff was seen by Defendant Dr. Sevrey. He told the doctor about his symptoms and his claim that he was being poisoned. The doctor prescribed Prilosec and ordered a blood test. (Ex. A-4). The results were negative for toxins. (Ex. B). On January 3, 2007, he was taken to the Corrections Medical Center (CMC) for a GI test. The test was cancelled. When he returned, he alleges that he refused to get off the bus unless he could meet with the Warden. He learned that the Warden was already gone for the day and he was referred to a mental health counselor instead. Plaintiff acknowledges that he was also given some other tests to determine whether or not he had been poisoned and that the lab tests came back negative.

Plaintiff alleges that the medical Defendants were deliberately indifferent to his serious medical needs and that the Warden was also deliberately indifferent. He claims that the Defendants refused to intervene and require medical staff to give Plaintiff proper medical care. His medical record indicates he was seen 6 times by nurses and 3 times by Dr. Severy between November, 2006 and February, 2007. (Ex. A)

Plaintiff seeks an injunction ordering the Defendants to arrange for Plaintiff to be examined and tested by a specialist on poisoning, award him compensatory damages, $30,000.00 against Defendants Voorhies and Adkins and $150,000.00 against Dr. Sevrey and Nurse Treadway. He also seeks $125,000.00 against Defendant Sand. In addition Plaintiff seeks punitive damages in the amount of $38,500.00.

## OPINION

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled

2

to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Under Rule 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323. The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Plaintiff's Claim for Failure to Protect

The Eighth Amendment prohibits the infliction of cruel and unusual punishments. It is well settled that the conditions under which a prison inmate is confined and the treatment he receives while incarcerated are subject to Eighth Amendment scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993). Once the state incarcerates a person against his will and restrains his liberty so that he is unable to care for himself, the Eighth Amendment imposes on the state and its agents a corresponding responsibility for the inmate's safety and well being. *Id.* at 2480.

To state an Eighth Amendment claim against prison officials based on their failure to protect him from attack by other inmates, plaintiff must allege facts showing that defendants' conduct amounted to "deliberate indifference" to a known risk of harm to plaintiff. *Farmer v. Brennan*, 511 U.S. 825 (1994). *See also Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Marsh v. Arn*, 937 F.2d 1056, 1060-61 (6th Cir. 1991); *Walker v. Norris*, 917 F.2d 1449, 1453-54 (6th Cir. 1990). A prison official may

3

be held liable for his failure to protect inmates from attacks by other inmates only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's safety before an Eighth Amendment violation will be found. *Id.* at 835; *Gibson,* 963 F.2d at 853. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough that the official "should" have perceived a significant risk, but did not. *Id.* Moreover, liability will not be found where a prison official actually knew of a substantial risk of harm to an inmate if he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844.

Plaintiff has been in Protective Control since 1998 when he gave some information to prison officials, information which could have placed him in danger. At this time, Plaintiff was incarcerated at SOCF. Plaintiff was later transferred to Warren Correctional Institution (WCI), an institution which house PC inmates. (Doc. 49, Ex. C). Thereafter, in 2003, Plaintiff was transferred to Toledo Correctional Institution (ToCI) and then to Marion Correctional Institution (MCI). Plaintiff remained in PC while at both institutions. (Id.). On July 7, 2006, Plaintiff was once again transferred back to SOCF and was placed in PC. (Id.). In addition to placement in PC, Plaintiff also has a several separation orders from other inmates. Thus, he cannot be housed near those inmates from whom he has a separation. Moreover, because Plaintiff was found with a knife in his cell, his security classification was increased. While Plaintiff remains in PC, he is also in segregation due to his high security classification. Because all access to Plaintiff is monitored closely by SOCF corrections officers, the combination of PC and segregation necessarily protects Plaintiff from those whom he alleges wish to do him harm. Plaintiff has failed to provide any evidence that he has been harmed or that Defendants have disregarded a substantial risk of serious harm to Plaintiff. *See Farmer*, 511 U.S. at 847. For this reason, we find that summary judgment is appropriate in Defendants' favor with respect to this claim.

4

## Deliberate Indifference to Medical Needs

In order to state a claim for relief under 42 U.S.C. § 1983 for a denial of medical care, a prisoner "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prisoner who is allowed to suffer needlessly through a denial of medical care when relief is available has a cause of action under the Eighth Amendment against an individual whose deliberate indifference caused the suffering. Plaintiff must allege that prison officials have denied his reasonable requests for medical care when such need is obvious, and when he is susceptible to undue suffering or threat of tangible residual injury. *Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976); see also *Estelle*, 429 U.S. at 106. Where medical assistance has been administered, such treatment must be so "woefully inadequate as to amount to no treatment at all" in order to give rise to a cause of action under § 1983. *Westlake*, 537 F.2d at 860-61 n.5. Allegations of negligence in diagnosing or treating medical conditions are not actionable under § 1983. *Estelle*, 429 U.S. at 106; *Byrd*, 701 F.2d at 595 n.2; *Westlake*, 537 F.2d at 860-61 n.5. A prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement, including proper medical care, only if "he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

"When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970; *see also Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)("Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain."). Instead, "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836, 114 S.Ct. 1970." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), *cert. denied*, 123 S.Ct. 86 (2002).

Even assuming Plaintiff were to receive a contrary opinion from another physician, the decision of prison officials and doctors to follow one course of treatment over another does not amount to deliberate indifference under the Eighth Amendment. Plaintiff's complaints about the type of treatment received amount to little more that a difference of opinion between Plaintiff and the physicians who treated him as to the appropriateness of his medical care. It does not amount to deliberate indifference under the Eighth Amendment. *See Estelle,* 429 U.S. at 107-108; *Westlake,* 537 F.2d at 860-861 n.5.

The issue is not whether Plaintiff received medical care which he deems "meaningful," but rather whether prison officials and doctors were deliberately indifferent to his medical needs. Plaintiff was repeatedly seen by medical staff. (Doc. 49, Ex. A). Plaintiff was given an upper GI test which indicated that no ulcers or other gastrointestinal ailment existed. (Doc. 17, Ex B, Affidavit of Martin R. Sevrey, M.D., at ¶13). A toxicology screen was also performed on Plaintiff, the results of which were normal. (Id. at ¶¶14, 15). In February, 2007, Plaintiff had blood work done, which indicated that his kidney, liver and electrolytes were normal. (Id. at ¶17). Dr. Sevrey concluded that there was no evidence that Plaintiff had been poisoned, by either "an organic or inorganic substance." (Id. at ¶¶ 16, 18). Plaintiff was also seen on November 9, 2006 by Defendant Treadway, who noted "no acute physical distress." (Doc. 49, Ex. A-5). Because he presented with no acute symptoms, he was not given an immediate referral to the doctor. However, Plaintiff was seen by the doctor on November 21, 2006, at which time the doctor found no medical problems. (Id. at Ex. A-4). The failure to pursue every conceivable option for medical treatment does not constitute deliberate indifference to plaintiff's medical needs. Although plaintiff disagrees with the treatment he ultimately received, the Court cannot say that such treatment was so "woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860-61 n.5. At most, Plaintiff may state a claim for malpractice, but "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Accordingly, Defendants' Motion for Summary Judgment should be granted with respect to this claim.

## Claims Against Defendant Voorhies

Liability under § 1983 cannot be premised on the doctrine of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). A supervisor cannot be held liable unless there is evidence he directly participated in or encouraged the specific incident of misconduct. *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir, 1994); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421; *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). Where a supervisor is found to have abandoned the specific duties of his position, such as adopting and implementing a particular operating procedure, liability is direct, not vicarious. *Taylor v. Mich. Dept. of Corrections*, 69 F.3d 76 (6th Cir. 1995). "[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 1763 (1999).

To the extent Edwin Voorhies was named as a defendant simply because he was Warden at SOCF during the relevant time period, Plaintiff's claims against him must fail. Plaintiff does not allege, and has failed to establish, that Voorhies was personally involved in any of Plaintiff's claims. Likewise, he has offered no evidence that Voorhies "implicitly authorized, approved or knowingly acquiesced" in the alleged unconstitutional conduct. *Bellamy* 729 F.2d at 421. Plaintiff sent Defendant Voorhies several kites and informal complaints regarding a variety of issues. Defendant Voorhies, in turn, referred Plaintiff to the appropriate staff member to address his concerns. (*See* Doc. 49, Exs. I, J). There is simply no evidence that Defendant Voorhies was personally involved with the actions of the medical or prison staff which relate to Plaintiff's Eighth Amendment claims. Accordingly, we find that summary judgment is appropriate with respect to Defendant Voorhies.

## IT IS THEREFORE RECOMMENDED THAT

1) Plaintiff's Motion for Summary Judgment (Doc. 55) be DENIED.
2) Defendants' Motion for Summary Judgment (Doc. 49) be GRANTED and Plaintiff's Complaint be DISMISSED.
3) This case be TERMINATED on the Court's Docket.

Date: September 30, 2008

Timothy S. Hogan
United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) in the event this Report is served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\LES\prisoner1983\Brown\msj

8

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X    ☐ Agent   ☐ Addressee<br>B. Received by ( Printed Name )    C. Date of Delivery |
| 1. Article Addressed to:<br><br>Yusuf Brown # 322-338<br>SOCF<br>1724 St. Rt. 728<br>P.O. Box 45699<br>Lucasville, OH 45699 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>3. Service Type<br>☒ Certified Mail   ☐ Express Mail<br>☐ Registered   ☐ Return Receipt for Merchandise<br>☐ Insured Mail   ☐ C.O.D.<br>4. Restricted Delivery? (Extra Fee)    ☐ Yes |
| 2. Article Number<br>(Transfer from service label) | 7007 0710 0000 8134 9724 |
| PS Form 3811, August 2001 | Domestic Return Receipt     102595-02-M-1540 |

1:07cv101 Doc. 103